IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                     No. 17-cr-1548 WJ

JOHNNY LEE PADILLA, JR.,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR <u>SPECIFIC DISCOVERY</u>

THIS MATTER is before the Court on Defendant's Motion for Specific Discovery, filed on July 7, 2017 (**Doc. 15**). Having considered the parties' written arguments and the applicable law, the Court finds that Defendant's motion is not well-taken and is, therefore, **DENIED**.

## BACKGROUND

The relevant background facts are set forth more fully in the parties briefing on Defendant's Motion to Suppress (Docs. 17 and 20). On March 29, 2017, state and federal law enforcement officers and officers from the New Mexico Probation and Parole Division (NMPPD) searched the residence of Defendant Johnny Lee Padilla, Jr., one of NMPPD's probationers. The search was triggered by a number of Defendant's reported probation violations.[1]

After learning of Defendant's probation violations, an NMPPD officer decided to search Defendant's residence. During the search, officers located distribution quantities of heroin, a drug ledger, and cellular communications that the government contends are consistent with drug

---

[1] Defendant had entered a "no contest" plea in New Mexico State Court to Residential Burglary, Possession of a Controlled Substance, and Possession of Drug Paraphernalia. Defendant was sentenced to five and a half years on November 13, 2015, of which four and a half years were suspended and replaced with probation. Defendant was alleged to have violated approximately half of his probation violations.

trafficking. The Indictment charges possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1)(A) and (b)(1)(C). The gist of Defendant's position is that the search of his residence was unlawful because the state and federal law enforcement officers were not acting under the direction of an NMPPD officer. As a result, Defendant claims he is entitled to certain discovery materials that help establish his defense.

## LEGAL STANDARD

There is "no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). "[T]he *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988); *see also United States v. Griebel*, 312 F. App'x 93, 95–96 (10th Cir. 2008) (noting the "[G]overnment's discovery obligations [] are defined by Rule 16, Brady, Giglio and the Jencks Act" and stating the defendant's request to expand his discovery rights beyond those three sources was unsupported by the law).

### *Rule 16*

Federal Rule of Criminal Procedure 16(a)(1) establishes guidance as to the nature and scope of pretrial discovery that the United States must provide. As to documents and objects, Rule 16(a)(1)(E) provides the following:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996). To show materiality, the evidence must bear some abstract logical relationship to the issues in the case such that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his favor. *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (internal quotations omitted). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *Mandel*, 914 F.2d at 1219.

### *Brady Material*

The *Brady* doctrine was established by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), described the responsibility of the government in dealing with *Brady*:

> But the prosecution, which alone can know what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

*Id.* at 437–38. *Brady* also extends to evidence affecting witness credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government is not required to produce evidence simply because it *might* be exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); *United States v. Fleming*, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."). The Court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See United States v. McVeigh*, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *McVeigh*, 923 F.Supp. at 1313. The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F.Supp. at 1314; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties.").

In his Motion, Defendant implies that some of his specific discovery requests essentially amount to *Brady* evidence. As a preliminary matter, the Court notes that Defendant has not shown cause for the Court to question the government's representations that it is complying with

*Brady*. Defendant's conclusion that certain evidence *must* be exculpatory and/or impeachment material simply because the Government does not wish to voluntarily turn it over is not a sufficient basis for the Court to order the production of the material under *Brady*. Aside from citations to the *Brady*/*Giglio* line of case law, Defendant offers the Court no authority that stands for the proposition that government communications must be disclosed to Defendant simply because they might be helpful to him. The government is no doubt aware of its obligation under *Brady*. Moreover, the government must provide any material falling under *Brady* in a timely manner. Defendant has not pointed to any specific material that is truly exculpatory and/or impeachment material that the government has failed to provide. Accordingly, to the extent that Defendant's discovery requests are based upon *Brady*, those requests are denied.[2]

### *Jencks Act Material*

The Jencks Act, 18 U.S.C. §3500, provides ,"[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500 (a). The Act requires the government to provide the statements only *after* the witness has testified. *See* 18 U.S.C. § 3500 (b). Jencks material differs from *Brady* material in that it covers any statement made by the government's witness whether or not it is directly contradictory to his or her testimony. *United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976).

Here, Defendant asks the Court to order the government to go beyond what is required under the Jencks Act and direct the government to provide Jencks material months ahead of trial.

---

[2] The government states that it will voluntarily request the records Defendant seeks from NMPPD and the New Mexico State Police and that if those records trigger its *Brady*/*Giglio* obligations, the government will disclose them.

Defendant has not cited to any authority requiring the government to provide Jencks material prior to when the witness or witnesses in question testify and the Court's own research on this issue reveals none. Accordingly, the Defendant's request for an order requiring early disclosure of Jencks material is denied, as the Court will not depart from well-established precedent concerning the disclosure of Jencks material.[3] Additionally, based upon the plain wording of the Jencks Act, the Court questions whether it has authority to issue the type of order requested by Defendant.

The government represents that to the extent it plans to call witnesses at trial or a suppression hearing whose Jencks material may fall within the scope of Defendant's request, the government will disclose such Jencks material. The Court will allow the government to decide when, in advance of trial, Jencks material will be disclosed.

## DISCUSSION

Defendant argues he is entitled to the following specific discovery requests:

- Any and all correspondence, emails, texts, or any other communication between any New Mexico Probation & Parole Division (NMPPD) employee and any member of the DEA, DEA Task Force, or any other law enforcement official concerning Johnny Lee Padilla, Jr.

- Any records or tactical plans concerning a contemplated search of Mr. Johnny Lee Padilla's residence.

- Any information in the possession of any law enforcement entity or NMPPD which would purport to establish reasonable suspicion that Mr. Padilla violated any term of his supervision or that he had engaged in any criminal conduct.

- Any videos or photographs of the NMPPD search of Mr. Padilla's residence.

Defendant asserts the requested information is relevant to his defense to establish the law enforcement officers who participated in searching his residence were not acting under the

---
[3] In addition to being overbroad and burdensome, the Court finds that much of this information sought would violate the government's work-product privilege. *See* Fed. R. Crim. P. 16(a)(2).

direction of a NMPPD officer. Moreover, the requested material is relevant to establish that the search in this case by federal law enforcement officers occurred while the officers were acting independently of a parole officer. As such, Defendant contends the requested material is relevant and exculpatory.

The United States responds that Defendant fails to explain how the information he seeks is material or exculpatory. Instead, Defendant asks the Court to compel discovery of information that might be useful to his Motion to Suppress. The government appropriately points out that Defendant cites no authority providing that exculpatory or impeachment material obligations under *Brady*/*Giglio* extend to material that might support a motion to suppress. Moreover, the government asserts its discovery obligations do not extend to the files of every law enforcement entity that may have information that Defendant was in violation of the terms of his probation. Finally, the government points out that it has already disclosed, or plans to disclose, much of the information Defendant seeks. The United States has already provided Defendant with all of the photographs and audio recordings of the search of Defendant's residence in its possession. The United States has also disclosed to Defendant the DEA report that describes the circumstances that triggered the residential search.

In the Reply, Defendant states the government has a duty to search the files of other agencies for material responsive to his discovery requests, and to provide material information based on its knowledge of these searches. Defendant states that the information he seeks would show whether the DEA and the federal government was acting independently or under the control of the NMPPD during their search of Defendant's residence. However, the government has represented that it already sent Defendant a DEA report describing the search and that it will duly disclose any Jencks material at the proper time. Moreover, the government stated it will

request NMPPD and New Mexico State Police to provide any records responsive to Defendant's requests.

The Court finds that Defendant has not articulated how any of the information sought, and that the government has not yet provided, is material or exculpatory. Indeed, the Court has a difficult time comprehending how NMPDD's communications with other agencies, "tactical plans," or information about Defendant's probation violations could be material to his defense. Citing *Kyles*, Defendant argues the law requires the government to hunt for material in the custody of other governmental agencies. The Court does not find *Kyles* to support so broad a duty on the part of the government. Under *Kyles*, the government has a duty to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," in situations where other agencies have participated with the government to a degree which would justify such a duty, including joint investigations, shared resources, and when other agencies have taken an active role in the prosecution. *See Kyles*, 514 U.S. at 437.

Furthermore, the government's duty under *Kyles* is limited to exculpatory material under *Brady*, and to its obligations under Rule 16(a)(1)(E)(i) (duty to disclose items that are "within the government's possession, custody or control"); *see also U.S. v. Pearl*, 324 F.3d 1210, 1215 (10th Cir. 2003) (disclosure of exculpatory material under *Brady* governs material that is still in the government's possession). The Court finds that *Kyles* does not apply in this case because of the nature of the requested material, where Defendant prematurely and speculatively characterizes the requested material as "exculpatory" without making the requisite showing. *See United States v. Jordan*, 316 F.3d 1215, 1251–52 (11th Cir. 2003) (a "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files").

The United States represents it will voluntarily request the records Defendant seeks from the New Mexico Probation and Parole Division and the New Mexico State Police, and the Court is confident that if those requests trigger the government's obligations under *Brady* and *Giglio*, the government will disclose them to Defendant. Defendant has not otherwise identified how the information he seeks is material or exculpatory. Therefore, Defendant's Motion for Specific Discovery is (**Doc. 15**) is **DENIED**.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE